IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ARON EZRA WESSEL,

    Petitioner,                    No. 2:09-cv-2720 JFM (HC)

    vs.

R. BARNES, Warden,

    Respondent.                ORDER

_____/

        Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This action is proceeding before a United States Magistrate Judge with the consent of the parties pursuant to 28 U.S.C. § 636(c). See Consents filed October 9, 2009 and November 16, 2009.

        This action is proceeding on the first claim for relief raised in the petition, filed September 30, 2009. See Order filed December 23, 2009. Petitioner claims that the prosecutor committed misconduct in his rebuttal argument and that his attorney was ineffective in failing to object to the misconduct.[1]

---

[1] On December 30, 2011, petitioner filed a letter in which he alleges that "in or on this case #0666 Siskiyou County has put a false sexual charge on [his] paperwork." Letter filed December 30, 2011, at 1. That allegation is not part of the claim before this court. The action at bar arises from a conviction petitioner suffered in 2007 on charges of attempted premeditated

1

FACTS[2]

*Prosecution Case-in-Chief*

On December 23, 2005, victim Michael Duckworth visited his ex-girlfriend, Jennifer Tabash, at her residence in rural Siskiyou County. Jennifer's then-eight-year-old daughter (Savanna), Jennifer's sister and [petitioner] were also present.[3] At about 9:00 p.m., the group was sitting and talking. Duckworth and [petitioner] had gotten along fine. At trial Duckworth opined that [petitioner] was drunk, based upon: (1) his having seen [petitioner] take a couple of drinks, (2) [petitioner] having a loud argument with his girlfriend over the telephone, and (3) [petitioner] shooting Duckworth early the next morning.

Duckworth and Jennifer went to sleep in one of the bedrooms. At about 2:00 a.m., Duckworth was awakened by the sound of gunfire; he assumed that [petitioner] was shooting at coyotes or something. Duckworth told Jennifer to see what [petitioner] was doing; Jennifer went into the living room.

[Petitioner] was angry and was yelling. Duckworth realized that [petitioner] was angry at him. [Petitioner] said something to Jennifer like, "I told you it was either him or me. Now I'm going to have to kill him, go to jail because of you." Jennifer was crying, she tried to calm [petitioner] by saying "I'll get him out. I'll never have him come back if you just calm down." [Petitioner] and Jennifer argued for one to five minutes. Duckworth testified that if he told an officer that [petitioner] had said, "I'm going to shoot him in the head," then most likely [petitioner] had said that.

[Petitioner] carried a rifle into the bedroom where Duckworth was sitting on the bed. [Petitioner] walked up to Duckworth and pointed the rifle at him. Duckworth indicated that the barrel was pointed at his head; Savanna, who witnessed the shooting, testified that [petitioner] point the rifle at Duckworth's chest. [Petitioner]

---

murder, assault with a firearm, child endangerment, criminal threats, and first degree burglary. See Lodged Document No. 8, People v. Wessel, No. C056742, slip op. at 1-2 (Jan. 20, 2009). In addition, the trial court found that petitioner had suffered a prior conviction of assault by force likely to produce great bodily injury, a serious felony, for which he had served a prior prison term. Id. at 2. Petitioner's December 30, 2011 letter will be disregarded. Nothing in this order shall be construed to preclude petitioner from taking such steps as may be appropriate to challenge the allegedly false paperwork from Siskiyou County in another proceeding.

[2] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Wessel, supra.

[3] Because Jennifer and Savanna have the same surname, we shall refer to them by their first names.

2

made a motion as if to shoot the rifle; Duckworth swatted the end of the rifle, and the rifle discharged into Duckworth's shoulder. [Petitioner] used the gun to strike Duckworth in the face and throat. [Petitioner] then left the bedroom.

Duckworth sat for a minute, stunned. He heard [petitioner] state that he was going to get in trouble and go back to jail. Jennifer walked into the bedroom; Duckworth said, "I think your brother just shot me," and blood began squirting from his wounds. Duckworth left the residence to go to the hospital. He encountered [petitioner] and Jennifer outside the residence. [Petitioner] said something to Jennifer about not going to jail. At one point, Duckworth was about a foot and a half away from [petitioner]. [Petitioner] pointed the rifle at Duckworth's head; Duckworth grabbed it and fired off the remaining rounds. [Petitioner] threatened to have his cousins attack Duckworth.

Duckworth got into his car and started driving to the hospital. He took a wrong turn; Jennifer and [petitioner] pulled up in another car. [Petitioner] got out of the car; Duckworth told him to get back in the car and get his sister. Duckworth did not want [petitioner] to drive because he was afraid that [petitioner] would kill him and bury him. Jennifer got into Duckworth's car and helped him drive to the hospital.

*Defense*

Defense counsel asked a sheriff's deputy about some alleged inconsistencies between Duckworth's pretrial statement to the deputy and his trial testimony. The deputy did not recall, and his report did not reflect, any statement by Duckworth about his having grabbed or swiped at the gun barrel before the shot was fired. The deputy recalled Duckworth having claimed that, after taking possession of the rifle, he ejected the remaining shells as opposed to firing the gun repeatedly to empty the magazine.

The prosecutor asked the deputy about some of Duckworth's prior consistent statements. Duckworth had told the deputy that [petitioner] had said that he was going to: (1) kill Duckworth, and (2) shoot him in the head.

A defense investigator testified about an unsuccessful attempt to interview Jennifer.

People v. Wessel, slip op. at 3-6.

/////

/////

/////

3

ANALYSIS

I. <u>Standards for a Writ of Habeas Corpus</u>

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. <u>Early v. Packer</u>, 537 U.S. 3, 7 (2002) (<u>citing</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. <u>Williams</u>, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id.</u> at 412; <u>see also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. <u>Avila v. Galaza</u>, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court

reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d).  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

II.  Petitioner's Claim

Petitioner claims that his constitutional rights were violated by prosecutorial misconduct during the prosecutor's closing argument and ineffective assistance of counsel in counsel's failure to object to the alleged misconduct.  The last reasoned state court decision on this claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal, which set forth the facts relevant to the claim as follows:

> [Petitioner] contends the prosecutor committed misconduct during his closing summation by:  (1) comparing the reasonable doubt standard to a jigsaw puzzle with some missing pieces, and (2) using the term "comfortably satisfied" during his argument about the jigsaw puzzle.  He claims his trial counsel's failure to object to the misconduct constituted ineffective assistance.  We are not persuaded.
>
> The jury was instructed with Judicial Council of California Criminal Jury Instructions (2007-2008), CALCRIM No. 220 on reasonable doubt.[4]  At the end of his closing summation, the prosecutor stated:  "Now, when I was a kid on rainy days my mom used to have these boxes of puzzles anywheres from 500 to a thousand pieces.  First thing you would do if you wanted to put the puzzle together is you would get the pieces on the edge and you

---

[4] CALCRIM No. 220 told the jury:

   The fact that a criminal charge has been filed against the defendant is not evidence that the charge or charges are true.  You must not be biased against the defendant just because he has been arrested or charged with a crime or brought to trial.
   "The defendant in a criminal case is presumed to be innocent.  This presumption requires that the People prove a defendant guilty beyond a reasonable doubt.
   "Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt unless I specifically tell you otherwise.
   "Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charges is [sic] true.  The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt.
   "In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial.  Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty."

5

|   |   |
|---|---|
| 1 | started putting them together because they always had a straight edge.  They were easy to identify.  All the rest of them had squiggly things and you didn't know where in the heck they went.  Maybe if there was a major color contrast, you could tell where they would go and so forth.  [¶]  So we kids would sit around the table and start to put those puzzles together.  And as the puzzle starts to come together, you can find that every once in a while you will find that there is a missing piece and when you get the puzzle, oh, 80 or 90 percent put together, sometimes you'll have a whole section that you can't see and there will be pieces here and there and – but when you step back and you look at it, it's kind of like, o, god, I could tell what that is.  But there is a missing piece here, and there is a missing piece here and this is all missing here, this is missing here, but you could still tell it's a table with a vase and flowers in it.  [¶]  That's kind of like what beyond a reasonable doubt is.  If you raise questions about, well, what about this and what about this and what about that, you say, oh, geez, you can't tell what that is unless you have all those pieces.  That's not true.  That is just like deciding the case, a criminal case.  If questions are raised about what missing pieces are, what if this, what if that, what do you know, what's that.  You don't need to know those if it's proven beyond a reasonable doubt.  [¶]  Beyond a reasonable doubt just means that you have to be comfortably satisfied to know what is and if you can say, 'yeah, there is missing pieces and we don't know the answers to that, the cops could have done this or they could have done that, but they didn't, but that's okay because we can tell it's a table with a vase and flowers.'  [¶]  So I submit to you when you take count number 1, you look at the evidence in this case, and you look at the credible evidence in this case, the physical evidence compared to what the people say like Duckworth, for example, and Savanna had to say about the shooting, 'I am going to shoot him, I'm going to kill him, I'm going to shoot him in the head, now I am going to have to go to jail because of you, because I am going to shoot him, that is why I'm going to have to go to jail because of you,' that is the premeditation and the deliberation that is necessary for count 1.  That is what he said he was going to do.  That is what he did.  [¶]  I submit to you as to count 1 your verdict should be guilty of attempted murder with the use – intentional use of a firearm causing great bodily injury.  [¶]  Thank you." |

People v. Wessel, slip op. at 20-23.

In rejecting petitioner's claims of prosecutorial misconduct and ineffective assistance of counsel, the state court of appeal relied primarily, though not exclusively, on the standards applicable to an ineffective assistance of counsel claim because it also relied on the principal of California law that "'a defendant may not complain on appeal of prosecutorial

6

misconduct unless in a timely fashion – and on the same ground – the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety. [Citation.]" [Citation.]'" People v. Wessel, slip op. at 24 (quoting *People v. Stanley* (2006) 39 Cal.4th 913, 951-952.) The state court of appeal found that "there is no reasonable probability that the result of the proceeding would have been more favorable absent the prosecutor's argument." People v. Wessel, slip op. at 25. The state court further found that "[i]t is not reasonably probable that any juror understood the argument as lessening reasonable doubt, or that [petitioner] could have fared any better had his trial counsel objected to the jigsaw puzzle analogy. Id. at 26-27. Finally, the state court of appeal found that

> [t]he prosecutor did not state or imply that being 'comfortably satisfied' with respect to every day decisions requires the same degree of proof as being comfortably satisfied that guilt has been shown beyond a reasonable doubt. Any reasonable juror instructed with CALCRIM No. 220 would know that being comfortably satisfied as to the latter requires an abiding conviction. We presume that the jury followed the instruction and that the error was thereby rendered harmless. (Citation omitted.) Trial counsel's failure to object to the argument could not have been prejudicial. (Citation omitted.)

Id. at 27-28. In a footnote, the court of appeal added that "[a]lthough we conclude the argument was not prejudicial, we nevertheless disapprove its use in future cases." Id. at 28 n.8.

Prosecutorial misconduct rises to the level of a constitutional violation only when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citation omitted). In addition, ineffective assistance of counsel only violates the constitution when counsel's performance falls below an objective standard of reasonableness, and petitioner suffers prejudice as a result. Strickland v. Washington, 466 U.S. 688, 690, 693 (1984). To demonstrate prejudice, petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. The focus

of the prejudice analysis is on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993). Thus, both aspects of petitioner's claim would require a showing that his trial was rendered fundamentally unfair by the prosecutor's closing argument and his counsel's failure to object to it.

In addition, on federal habeas corpus review, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S.Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). That is, unless the state court's decision is "objectively unreasonable" petitioner's claim must be denied. Yarborough, at 665.

In view of the evidence against petitioner and the fact that the jury was instructed properly on the standard of reasonable doubt, this court cannot find either that the prosecutor's argument rendered petitioner's trial fundamentally unfair or that there is a reasonable probability that the outcome of petitioner's trial would have been different had his attorney objected to the argument. The state court's decision to reject this claim was not objectively unreasonable, nor was it contrary to or an unreasonable application of relevant principles of federal law. For these reasons, petitioner's habeas corpus petition will be denied.

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, "[t]he district court must issue or a deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, 28 U.S.C. foll. § 2254. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court must either issue a certificate of appealability indicating which issues satisfy the required showing or must state the reasons why such a certificate should not issue. Fed. R. App. P. 22(b). For the reasons /////

1  set forth in this order, petitioner has not made a substantial showing of the denial of a
2  constitutional right. Accordingly, this court will not issue a certificate of appealability.
3          In accordance with the above, IT IS HEREBY ORDERED that:
4          1. Petitioner's application for a writ of habeas corpus is denied; and
5          2. This court declines to issue a certificate of appealability.
6  DATED: February 24, 2012.

                                          UNITED STATES MAGISTRATE JUDGE

12
wess2720.157